Daniel J. Herling (State Bar #103711)
(herling@khlaw.com)
Michelle Gillette (State Bar #178734)
(gillette@khlaw.com)
Howard I. Miller (State Bar #251878)
(miller@khlaw.com)
KELLER AND HECKMAN LLP
One Embarcadero Center, Suite 2110
San Francisco, CA  94111
Telephone:      415-948-2800
Facsimile:      415-948-2808

David B. Rosenbaum (*pro hac vice*)
(drosenbaum@omlaw.com)
James K. Rogers (*pro hac vice*)
(jrogers@omlaw.com)
Maureen Beyers (*pro hac vice*)
(mbeyers@omlaw.com)
OSBORN MALEDON, P.A.
2929 North Central Ave., Suite 2100
Phoenix, AZ  85012-2793
Telephone:      602-640-9000
Facsimile:      602-640-9050

Attorneys for Defendant
Jamba Juice Company

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN ANDERSON, on behalf of himself and all other similarly situated,<br><br>            Plaintiff,<br><br>vs.<br><br>JAMBA JUICE COMPANY,<br><br>            Defendant. | Case No. 4:12-cv-01213-YGR<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Hearing Date:        July 31, 2012<br>Judge:               Hon. Y. Gonzalez Rogers<br>Complaint Filed:     March 12, 2012<br>Trial Date:          None Set |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

1    PLEASE TAKE NOTICE that on July 31, 2012 at 2:00 p.m. or as soon thereafter as the matter

2   may be heard in the courtroom of the Honorable Yvonne Gonzalez Rogers, United States District Judge,

3   Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Defendant Jamba Juice

4   Company ("Jamba Juice") will move, and hereby does move, pursuant to Rule 12(b)(1) and (6) of the

5   Federal Rules of Civil Procedure to dismiss Plaintiff Kevin Anderson's Fourth Cause of Action in his

6   First Amended Complaint for relief under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312

7   ("MMWA") because it does not state a claim for relief under Rule 12(b)(6) of the Federal Rules of Civil

8   Procedure.  Jamba Juice will further move and hereby does move to dismiss under Rules 12(b)(1) and (6)

9   all Plaintiff's claims against it as they relate to the Strawberries Wild, Caribbean Passion, and Orange

10   Dream Machine products because Plaintiff cannot establish that this Court has subject matter jurisdiction

11   over these claims.

12    This Motion is based on this Notice of Motion and Motion, Defendant's attached supporting

13   Memorandum of Points and Authorities, and the declaration of Maureen Beyers in support of this Motion

14   along with the exhibits thereto.

15   <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

16    The action concerns smoothie kits sold in retail outlets under the Jamba Juice brand.  While

17   Jamba Juice neither manufactures nor sells the smoothie kits, it has licensed its name to another

18   company, which is not named as a defendant in this action.  The smoothie kits bear a label describing

19   them as being all natural.  Plaintiff alleges that the phrase "all natural" is a misrepresentation and raises

20   various claims under California state law.  In his First Amended Complaint ("FAC"), which is attached

21   to the accompanying declaration of Maureen Beyers, Plaintiff seeks damages for breach of express

22   warranty under the MMWA, alleging that the smoothie kits' labels somehow create a written warranty

23   under 15 U.S.C. § 2301(6).  **(FAC at ¶¶ 58 - 68.)**  Plaintiff's claim fails as a matter of law, however,

24   because the smoothie kit labels do not fall within the MMWA's definition of a written warranty.

25   Plaintiff's claims also fail because the Court does not have subject matter jurisdiction over products he

26   did not buy.

27

28

## I.      Factual Allegations

Taking the FAC's allegations as true for purposes of this motion, Plaintiff Kevin Anderson purchased Jamba Juice-branded Mango-a-go-go and Razzmatazz smoothie kits around December 2011. **(FAC at ¶ 12.)**  In making his purchasing decision, Plaintiff claims to have relied on the packages' labeling indicating that the kits are all natural.  **(*Id.*)**  The front of the smoothie kits contained the following text:

> All Natural
> Smoothies
> Just Add Juice

**(*Id.* at Exhibit C, Exhibit E.)**

Plaintiff alleges that the following four smoothie kit ingredients are not natural:  ascorbic acid, citric acid, steviol glycosides, and xantham gum.  **(*Id.* at ¶¶ 20-24.)**  Plaintiff claims that Jamba Juice offered a warranty within the meaning of the MMWA by

> approving and making available to the pubic [sic] a label which identifies ingredients in the ingredients list on each of the smoothie kits, and then prominently affirming and promising in writing on the labeling of the smoothie kits that the smoothie kits were "All Natural" . . . .  These affirmations of fact regarding the nature and qualities of the ingredients in the smoothie kits constituted, and were intended to convey to purchasers, a written promise that the ingredients in the smoothie kits labeled "All Natural" were free of a particular defect (*i.e.* that they were not synthetic, artificial and/or otherwise non-natural).

**(*Id.* at ¶ 64.)**

Jamba Juice has many defenses to both the state law and MMWA claims that are not ripe for this motion to dismiss, including the essential facts that (1) it neither makes nor sells the smoothie kits, (2) there is nothing false or misleading about the product labels, and (3) no class of consumers was misled by the labeling or harmed in any way when they purchased perfectly good, tasty, and natural smoothie kits. This motion instead focuses solely on defects in the FAC.

## II.     Argument

### A.      The MMWA Claim Must Be Dismissed Because There Is No Written Warranty.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (citation omitted).  Dismissal as a matter of law is appropriate for

one of two reasons:  "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable

legal claim."  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).  To survive a

motion to dismiss, "Plaintiffs' right to relief must be more than merely conceivable."  *Ultimate*

*Creations, Inc. v. McMahon*, 515 F. Supp. 2d 1060, 1064 (D. Ariz. 2007) (citing *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)).  Instead, Plaintiffs must allege "enough facts to state a claim to

relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)."

"[C]onclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to

dismiss."  *Ultimate Creations, Inc.*, 515 F. Supp. 2d at 1064 (citation and quotation omitted).

        Plaintiff's sole basis for his MMWA claim is that the MMWA "creates a private federal cause of

action for breach of 'written warranty' as defined by" the MWWA.  **(FAC at ¶ 59.)**  The MMWA

defines a written warranty as:

> any written affirmation of fact or written promise made in connection with the sale of a consumer
> product by a supplier to a buyer which relates to the nature of the material or workmanship and
> affirms or promises that such material or workmanship is defect free or will meet a specified level
> of performance over a specified period of time . . .

15 U.S.C. § 2301(6)(A).  Plaintiff's MMWA claim must be dismissed because the smoothie kits' labels

do not constitute a written warranty within the meaning of the MMWA.

        "When a court is faced with a problem of statutory construction, . . . the court should show great

deference to the interpretation given to the statute by the officers or agency charged with its

administration."  *Autrey v. Potlatch Corp.*, 800 F. Supp. 872, 875 (N.D. Cal. 1992).  The Federal Trade

Commission's ("FTC") interpretation of the MMWA makes clear that the smoothie kits' labels'

description of the product as being "all natural" is not a written warranty:

> Certain representations, such as energy efficiency ratings for electrical appliances, care labeling
> of wearing apparel, and other product information disclosures may be express warranties under
> the Uniform Commercial Code.  However, these disclosures alone are not written warranties
> under this Act.  Section 101(6) provides that **a written affirmation of fact or a written promise
> of a specified level of performance *must relate to a specified period of time* in order to be
> considered a "written warranty."**  . . . The Commission encourages the disclosure of product
> information which is not deceptive and which may benefit consumers, and will not construe the
> Act to impede information disclosure in product advertising or labeling.

16 CFR 700.3(a) (emphasis added); *see also* 15 U.S.C. § 2312(c) (empowering the FTC to promulgate

rules for the implementation of the MMWA).  Plaintiff argues that the phrase "all natural" on the

smoothie kits is an "affirmation of fact regarding the nature and qualities of the ingredients in the smoothie kits . . . [as being] free of a particular type of defect." **(FAC at ¶ 64.)** The text on the smoothie kits' packages, however, contains no promise regarding the products' performance or absence of defects over a specific period of time as required by the statute. The text "all natural" is merely a "product information disclosure" as described by the FTC and does not constitute a written warranty under the MMWA.

Federal courts have agreed that a written warranty under the MMWA must "affirm that the [product] would meet a specified level of performance over a specified period of time." *Skelton v. Gen. Motors Corp.*, 660 F.2d 311, 316 n.7 (7th Cir. 1981) (internal quotation omitted); *see also Semitekol v. Monaco Coach Corp.*, 582 F. Supp. 2d 1009, 1027 (N.D. Ill. 2008) (explaining that a written statement which "does not mention 'replacement' or any other remedial action, does not state that the [product] . . . would be 'defect free,' and does not state that the [product] would meet any 'specified level of performance' over any particular time period" did not constitute a written warranty under the MMWA); *Simmons v. Taylor Childre Chevrolet-Pontiac, Inc.*, 629 F. Supp. 1030, 1032 (M.D. Ga. 1986) (quoting *Skelton*) (explaining that "'a written affirmation of fact or a written promise of a specified level of performance must relate to a specified period of time in order to be considered a 'written warranty''"). "[T]o be a 'written warranty,' the warrantor's guarantee must contain language that specifically identifies the duration of the warranty." *Kelley v. Microsoft Corp.*, C07-0475MJP, 2007 WL 2600841 at *5 (W.D. Wash. 2007). The *Kelley* court explained the importance of the time period requirement for written warranties:

> a bright-line rule regarding specification of period of time was necessary because "to comply with the Act's obligations, manufacturers and suppliers must know in advance exactly which representations are subject to those obligations." Indeed, the Act requires warrantors warranting to a consumer by means of a written warranty to clearly and conspicuously in a single document identify: (1) the identity of the party to whom the warranty is extended, (2) the products or parts excluded from the warranty, (3) what the warrantor will do in the event of a defect, (4) when the warranty commences, etc.

*Id.* at *4 (quoting *Skelton*, 660 F.2d at 316 n.7).

A broad interpretation of the MMWA allowing the phrase "all natural" to be considered a written warranty would subject a plethora of manufacturers and retailers to significant uncertainty about whether

they will unknowingly subject themselves to the requirements of the MMWA through seemingly

innocuous product descriptions.  In *Skelton*, the Seventh Circuit reasoned that "it is quite plausible that

the Act's draftsmen defined 'written warranty' in [§ 2301(6)] so as to exclude general descriptions of

consumer products or their components from the reach of the Act, since it would be excessively

cumbersome to impose the Act's disclosure rules on every advertisement containing a description of a

product or its components."  660 F.2d at 316 n.7.  The Seventh Circuit's interpretation is far more

reasonable than the Plaintiff's seemingly broad interpretation, which would turn almost any descriptive

text on a product's label into a written warranty.  It strains credibility to maintain that Congress intended

that a two-word statement on a food product's label would create a written warranty under federal law.

Courts have held that other similarly-short descriptive phrases were not written warranties under

the MMWA.  In *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, the plaintiff claimed

that the phrase "Made in USA," which was printed on packaging and advertising for tools, was a written

warranty under the MMWA.  MDL-1703, 2012 WL 1015806 at *3 (N.D. Ill. 2012).  The court rejected

this argument because the phrase "Made in USA" "does not affirm or promise that the material or

workmanship is defect-free or will perform at a specified level over a specified time."  *Id.*  The court

further explained that

> The phrase is a product description that does not inform consumers that the tools are defect-free
> or make any representation about performance at a specified level over a specified time. . . .
> Although the phrase does arguably relate to the "nature" of the material or workmanship, it fails
> to satisfy the defect-free/performance prong of § 2301(6)(A).

*Id.*  In *Semitekol v. Monaco Coach Corp.*, a purchase order prepared by a motorhome dealer promised

"patriot style" mirrors.  582 F. Supp. 2d 1009, 1027 (N.D. Ill. 2008).  The court rejected the plaintiffs'

argument that this promise was a written warranty under the MMWA because

> The statement does not mention "replacement" or any other remedial action, does not state that the
> mirrors or any other part of the motorhome would be "defect free," and does not state that the
> mirrors would meet any "specified level of performance" over any particular time period.

*Id.*; *see also Kelley*, 2007 WL 2600841 at *5 (explaining that the three words "Windows Vista Capable"

did not constitute a written warranty under the MMWA because the phrase contained no temporal

element); *Simmons*, 629 F. Supp. at 1032 (finding that the designation as being "new" on a vehicle

purchase invoice was not a written warranty under the MMWA, even though it may create a warranty

1    under state law, because "'a written affirmation of fact or a written promise of a specified level of

2    performance must relate to a specified period of time in order to be considered a 'written warranty.'"

3    (quoting *Skelton*, 660 F.2d at 316 n.7)).

4         The phrase "all natural" does not make any representation about the smoothie kits' performance

5    at a specified level over a period of time, nor does it purport to inform consumers whether the smoothie

6    kits are defect free. The phrase "all natural" "fails to satisfy the defect-free/performance prong of

7    § 2301(6)(A)" just like the phrase "Made in USA" fails to satisfy this prong. *In re Sears, Roebuck & Co.*

8    *Tools Mktg. & Sales Practices Litig.*, 2012 WL 1015806 at *3. As Exhibits A through E of the FAC

9    clearly demonstrate, the smoothie kits' product packaging plainly indicates that the purpose of each kit is

10   to "Make[] 2 – 8 oz. Smoothies." Plaintiff has made no allegation that the smoothie kits are unsafe, nor

11   has he argued that the smoothie kits were defective in fulfilling their essential purpose of making two

12   eight-ounce smoothies. The package labeling made no promises about the smoothies kits' performance

13   over time or whether they were defect free. There is thus no written warranty.

14

15        **B.    Plaintiff Does Not Have Standing to Bring Claims Relating to Strawberries Wild,
              Caribbean Passion, and Orange Dream Machine Smoothie Kit Flavors.**

16        On a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), the plaintiff bears the burden

17   of establishing that the court has subject matter jurisdiction. *Tosco Corp. v. Communities for a Better*

18   *Environment*, 236 F.3d 495, 499 (9th Cir. 2001). A federal court is presumed to lack jurisdiction unless

19   evidence to the contrary affirmatively appears, and dismissal is warranted unless a plaintiff is able to

20   demonstrate the existence of federal jurisdiction. *See, e.g.*, *A-Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th

21   Cir. 2003). "[S]tanding 'is a jurisdictional element that must be satisfied prior to class certification.'" *In*

22   *re Wells Fargo Mortgage-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 964 (N.D. Cal. 2010) (quoting

23   *LaDuke v. Nelson*, 762 F.2d 1318, 1325 (9th Cir.1985)).

24        Plaintiffs do not have standing to make any claims as to products they did not purchase because

25   they have not suffered any injury. They have neither Article III standing nor standing under California

26   law where they did not suffer injury-in-fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992);

27   *Bower v. AT & T Mobility, LLC*, 196 Cal. App. 4th 1545, 1554-56, 127 Cal. Rptr. 3d 569, 578 (2011).

28   Simply put, a plaintiff may not assert a claim for products that he did not purchase, even if he is acting as

a class representative for other class members who may have purchased that product. *Carrea v. Dreyer's Grand Ice Cream, Inc.*, C 10-01044 JSW, 2011 WL 159380 at *2-*3 (N.D. Cal. 2011), *aff'd*, 11-15263, 2012 WL 1131526 (9th Cir. 2012) (dismissing for lack of standing named class action plaintiff's claims under the California Unfair Competition Law ("UCL"), California False Advertising Law ("FAL"), and California Consumer Legal Remedies Act ("CLRA") as to products not actually purchased by named plaintiff); *Zwart v. Hewlett-Packard Co.*, 5:10-CV-03992-JF HRL, 2011 WL 767750 at *3 - *4) (N.D. Cal. Feb. 25, 2011) (dismissing plaintiffs' class action claims under the UCL and CLRA for products they had not actually purchased because the plaintiffs "have not made out an injury under the UCL or CLRA, nor have they established the requisite reliance or causation"); *see also In re Wells Fargo Mortgage-Backed Certificates Litig.*, 712 F. Supp. 2d at 963-66 (dismissing for lack of standing class action securities law claims as to securities which were not purchased by the named plaintiffs).[1]

The FAC states claims against Jamba Juice for the following Jamba Juice smoothie kits: Mango-a-go-go, Strawberries Wild, Caribbean Passion, Orange Dream Machine, and Razzmatazz. **(FAC at ¶ 28.)** Plaintiff only alleges, however, that he purchased Mango-a-go-go and Razzmatazz smoothie kits. **(*Id.* at ¶ 12.)** He never claims to have purchased Strawberries Wild, Caribbean Passion, or Orange Dream Machine smoothie kits. Plaintiff therefore could not have suffered any injury and cannot show reliance or causation relating to these three smoothie kit products. All of Plaintiff's claims as to the Strawberries Wild, Caribbean Passion, and Orange Dream Machine smoothie kits –products that he did not purchase – should therefore be dismissed both for lack of jurisdiction and for failure to state a claim.

## III.   Conclusion

Basic product disclosures on food labels are not written warranties. Plaintiff's MMWA claim is based on a tortuous interpretation of the statutory language that would so broaden the MMWA's scope as to include nearly any statement on a product's package. Plaintiff's claim should therefore be dismissed. Moreover, Plaintiff has failed to allege that he purchased the Strawberries Wild, Caribbean Passion, or

---

[1]     *But see Donohue v. Apple, Inc.*, 11-CV-05337 RMW, 2012 WL 1657119 at *5 - *6 (N.D. Cal. May 10, 2012) (concluding that named class action plaintiff had standing to assert claims for products that he had not purchased, but that defendant acknowledged had the same deficiency). The *Donahue* court distinguished contrary cases regarding nutritional supplements on the ground that the Plaintiff's claims were not based solely on a misrepresentation but also a diminution in value of the phones at issue. This case is more similar to the *Johns v. Bayer Corp.*, No. 09-1935 DMS, 2010 U.S. Dist. LEXIS 10926, *12-13 (S.D. Cal. Feb. 9, 2010) case, which was distinguished in the *Donahue* decision because, as in *Johns*, this case is based solely on a purported misrepresentation.

1   Orange Dream Machine smoothie kits, let alone that he suffered any injury from them and all of his

2   claims as to those three smoothie kit products should also be dismissed for lack of jurisdiction and failure

3   to state a claim.

4

5   Dated:  May 31, 2012                                    OSBORN MALEDON, P.A.

6

7                                                          By:  /s/ David B. Rosenbaum

8                                                               David B. Rosenbaum (*pro hac vice*)
                                                                James K. Rogers (*pro hac vice*)
9                                                               Maureen Beyers (*pro hac vice*)
                                                                Attorneys for Defendant Jamba Juice Company
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28