Rosemary M. Rivas (State Bar No. 209147)
rrivas@finkelsteinthompson.com
Danielle A. Stoumbos (State Bar No. 264784)
dstoumbos@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
100 Bush Street, Suite 1450
San Francisco, California 94104
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

*Counsel for Individual and Representative
Plaintiff Kevin Anderson*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN ANDERSON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>JAMBA JUICE COMPANY,<br><br>Defendant. | Case No. 12-CV-1213 (YGR)<br><br>Honorable Yvonne Gonzalez Rogers<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Hearing Date:  August 7, 2012<br>Time:           2:00 p.m.<br>Judge:          Hon. Y. Gonzalez Rogers<br>Complaint Filed: March 12, 2012<br><br>Trial Date:     None Set<br>Dept.:          TBD |

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ............................................................................................................. 1

II. STATEMENT OF FACTS ................................................................................................ 2

III. LEGAL STANDARD ........................................................................................................ 3

IV. PLAINTIFF HAS ADEQUATELY PLEADED A VALID MAGNUSON-MOSS WARANTY ACT CLAIM ................................................................................................. 3

    A. The Magnuson-Moss Warranty Act ...................................................................... 3

    B. Plaintiff has Pled a Written Warranty .................................................................... 7

    C. The Cases Defendant Relies On Are Distinguishable ........................................... 8

V. PLAINTIFF CAN BRING CLAIMS FOR FLAVORS HE HAS NEVER PURCHASED THAT HAVE SIMILAR MISREPRESENTATIONS ................................................................ 10

VI. LEAVE TO AMEND SHOULD BE GRANTED TO CURE ANY DEFICIENCIES ................ 12

VII. CONCLUSION ............................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                       **Page(s)**

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................ 3

*Browne v. Kline Tysons Imports, Inc.*,
  190 F. Supp. 2d 827 (E.D. Va. 2002) ...................................................................................... 8

*Bruno v. Quten Research Inst., LLC*,
  2011 WL 5592880 (C.D. Cal. Nov.14, 2011) ........................................................................ 11

*Cardenas v. NBTY, Inc.*,
  2012 WL 1593196 (E.D. Cal. May 4, 2012) ......................................................................... 11

*Carideo v. Dell Inc.*,
  706 F. Supp. 2d 1122 (W.D. Wash. 2010) ............................................................................ 10

*Doe v. U.S.*,
  58 F.3d 494 (9th Cir. 1995) ................................................................................................... 13

*Erickson v. Pardus*,
  551 U.S. 89 (2007) .................................................................................................................. 3

*Foman v. Davis*,
  371 U.S. 178 (1962) .............................................................................................................. 13

*Goodman v. Perlstein*,
  1989 WL 83452 (E.D. Pa. July 21, 1989) ......................................................................... 6, 10

*Group, Inc.*,
  276 F.R.D. 618 (N.D. Cal. 2011) ..................................................................................... 10, 11

*Hairston v. South Beach Beverage Company, Inc.*,
  2012 WL 1893818 (C.D. Cal. May 18, 2012) ................................................................. 10, 12

*Henderson v. Gruma Corp., Case No.*,
  2011 WL 1362188 (C.D. Cal. April 11, 2011) ....................................................................... 6

*Hewlett–Packard v. Super. Ct.,*,
  167 Cal. App. 4th 87 .............................................................................................................. 11

*In re Ferrero Litig.*,
  794 F. Supp. 2d 1107 .............................................................................................................. 6

*In re McDonald's French Fries Litig.*,
  503 F. Supp. 2d 953 (N.D. Ill. 2007) .................................................................................. 7, 10

*In re Sears, Roebuck & Co.*,
  2006 WL 1443737 (N.D. Ill. May 17, 2006) ............................................................................ 8

*In re Wells Fargo Mortgage-Backed Certificates Litig.*,
  712 F. Supp. 2d 958 (N.D. Cal. 2010) .................................................................................... 12

*Kelley v. Microsoft Corp.*,
  2007 WL 2600841 (W.D. Wash. Sept. 10, 2007) .................................................................... 9

*Lopez v. Prof'l Collection Consultants*,
  2011 WL 4964886 (C.D. Cal. Oct. 19, 2011) ......................................................................... 13

*Marine Midland Bank v. Carroll*,
  98 A.D.2d 516 (N.Y. App. Div. 1984) ................................................................................. 6, 10

*Nickoloff v. Wolpoff & Abramson, L.L.P.*,
  511 F. Supp. 2d 1043 (C.D. Cal. 2007) .................................................................................. 13

*Semitekol v. Monaco Coach Corp.*,
  582 F. Supp. 2d 1009 (N.D. Ill. 2008) ...................................................................................... 9

*Simmons v. Taylor Childre Chevrolet-Pontiac, Inc.*,
  629 F. Supp. 1030 (1986) ......................................................................................................... 9

*Skelton v. General Motors Corp.*,
  660 F.2d 311 (7th Cir. 1981) .................................................................................................... 9

*U.S. v. Webb*,
  655 F.2d 977 (9th Cir.1981) ................................................................................................... 13

*Vicuna v. Alexia Foods, Inc.*,
  2012 WL 1497507 (N.D. Cal. Apr. 27, 2012) ...................................................................... 6, 10

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) .................................................................................................... 3

*Wolph v. Acer Am. Corp., Case No. C*,
  2009 WL 2969467 (N.D. Cal. Sept. 14, 2009) ..................................................................... 7, 10

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*,
  135 F.3d 658 (9th Cir.1998) ..................................................................................................... 3

*Zwart v. Hewlett-Packard Co.*,
   2011 WL 767750 (N.D. Cal. Feb. 25, 2010) .................................................................. 12

**Statutes**

15 U.S.C. § 2301(6)(A) ................................................................................................ passim
15 U.S.C. § 2301(A) ........................................................................................................... 10
15 U.S.C. § 2302(a) .............................................................................................................. 3
15 U.S.C. §§ 2301 ............................................................................................................ 1, 4
15 U.S.C. §2301(1) ............................................................................................................... 4
Cal. Bus. & Prof. Code §§ 17200 ........................................................................................ 1
Cal. Bus. & Prof. Code §§ 17500 ........................................................................................ 1
Cal. Civ. Code §§ 1750 ........................................................................................................ 1

**Rules**

Fed. R. Civ. P. 8(a)(2) .......................................................................................................... 3

**Regulations**

16 C.F.R. § 700.3(a) .................................................................................................. 5, 6, 7, 8

I. **INTRODUCTION**

Plaintiff Kevin Anderson ("Plaintiff") filed this action on behalf of himself and a class of consumers who purchased one or more of Defendant Jamba Juice Company's ("Defendant" or "Jamba Juice") at home smoothie kits (the "smoothie kits"), which Plaintiff alleges were falsely labeled as "All Natural" despite the inclusion of the following non-natural ingredients: ascorbic acid, steviol glycosides, xanthan gum, and citric acid. Plaintiff alleges that Defendant violated the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"), the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), and the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* ("MMWA").

Defendant filed a partial motion to dismiss on May 31, 2012 ("MTD") (Dkt. No. 23), which does not dispute the validity of Plaintiff's UCL, FAL and CLRA claims. As such, Jamba Juice waives any arguments as to those claims. Defendant only raises two arguments: (1) that Plaintiff's MMWA claim fails because Plaintiff has not alleged that the "All Natural" statement on the smoothie kits established a written warranty; and (2) that because Plaintiff only purchased the smoothie kits in two of the five flavors, Plaintiff does not have standing as to the other flavors, and therefore the Court does not have subject matter jurisdiction over these claims.

As discussed *infra*, Defendant's first argument fails because it is based on Jamba Juice's own made-up standard for establishing a written warranty under the MMWA. According to Defendant, Plaintiff cannot establish a "defect free" claim as a written warranty under the MMWA if the statement is not accompanied by a statement specifying a level of performance over a specified period of time. Defendant's test has no basis under the MMWA, implementing rules or applicable case law. Further, even assuming the MMWA requires a temporal element, the smoothie kits contain an expiration date satisfying this purported requirement. Lastly, the five smoothie kits at issue in this case contain the exact misrepresentation that Plaintiff challenges, and the ***same*** non-natural ingredients (*i.e.* ascorbic acid, steviol glycosides, xanthan gum). Thus, Plaintiff has standing to bring the claims alleged in the operative complaint, and the Court has subject matter jurisdiction over this entire action. Therefore, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss in its entirety.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO.12-CV-1213 (YGR)

## II. STATEMENT OF FACTS

Founded in 1990, with a mission to promote healthy living, Jamba Juice is a leading healthy food and beverage retailer, offering fruit smoothies, fresh squeezed juices, teas, lattes, organic steel cut oatmeal, wraps, salads and sandwiches to consumers on the go. *See* First Amended Complaint ¶ 2 ("FAC"). In 2009, Defendant implemented expansion plans to transform the company from "a made-to-order smoothie company to a healthy, active lifestyle brand." *Id.* Since that time, Defendant's expansion plans have included entering into licensing agreements with third parties, which have enabled Defendant to unveil an "at home" product line. In fact, Jamba Juice now offers 30 products at approximately 30,000 points of retail distribution across all 50 states.[1] With the advent of the at home product line, Jamba Juice's brand name is now reinforced at grocery stores and big box retailers such as Target, Walmart, Kroger, Costco Wholesale, Safeway Albertsons and Food 4 Less throughout the country. *Id.* Thus, consumers need not visit a Jamba Juice retail store to be reminded of the company's aggressive marketing and advertising that it is a "healthy, active lifestyle brand with products that are better-for-you." FAC ¶¶ 2, 14. Jamba Juice's "at home" line includes smoothie kits, which currently come in 5 flavors (Mango-a-go-go, Strawberries Wild, Caribbean Passion, Orange Dream Machine, and Razzmatazz) (the "smoothie kits") and are prominently labeled, in bold and conspicuous print, as "All Natural." However, contrary to the prominent representation on the front of the labels, each of the smoothie kits contains non-natural ingredients such as ascorbic acid, steviol glycosides, xanthan gum, and citric acid, and thus are not "All Natural." FAC ¶¶ 3, 20-24. Plaintiff bought the smoothie kits that are the subject of this class action in reliance on the "All Natural" label. FAC ¶¶ 12, 25. Exemplars of Jamba Juice's smoothie kits' front label (attached to the complaint) are reproduced below.[2]

---

[1] Jamba, Inc., Annual Report (Form 10-K) at 40 (Mar. 9, 2012), *available at* http://www.sec.gov/Archives/edgar/data/1316898/000119312512106916/d280148d10k.htm ("Our [at home] products will help extend Jamba brand accessibility, offer additional product solutions and increase usage occasions. In addition, we believe the growth in our [at home] platform will help reinforce Jamba as a healthy, active lifestyle brand with products that are better-for-you, convenient and portable.") *Id.*

[2] Although Jamba Juice disputes that it is the proper party to this action, MTD at 2, Plaintiff disagrees and will produce evidence at the appropriate time.

 

### III. LEGAL STANDARD

In ruling on Defendant's motion to dismiss, all allegations in the complaint must be "taken as true and construed in the light most favorable to" Plaintiff. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 937 (9th Cir. 2008); *see also Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir.1998). While Plaintiff must plead more than mere "labels and conclusions," the complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Federal Rule of Civil Procedure 8(a)(2) only requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." A plaintiff need only allege facts to put the defendant on notice of the claim and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). A well-pleaded complaint may proceed even if it appears "that recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citation omitted).

### IV. PLAINTIFF HAS ADEQUATELY PLEADED A VALID MAGNUSON-MOSS WARANTY ACT CLAIM

#### A. The Magnuson-Moss Warranty Act

The MMWA was enacted "[i]n order to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products." 15 U.S.C. § 2302(a). To that extent, the MMWA requires that where a manufacturer provides a warranty as

to the quality of a consumer product, all disclosures therein must be specific and must be truthful, accurate, and written in "simple and readily understood language." *Id.* Under the MMWA, there are three ways for a consumer to establish that Defendant's representation is a written warranty: (1) that the product is represented as "defect free;" *or* (2) that the product purports to meet a specified level of performance over a specified period of time; *or* (3) that the Defendant offers to refund, repair or replace its product if the product does not meet Defendant's advertised standards. 15 U.S.C. § 2301.

Here, Plaintiff's MMWA claim is explicitly and only based on Defendant's affirmation that the smoothie kits were "defect free," under the MMWA's first prong. FAC ¶ 65. Defendant ignores Plaintiff's express allegations and instead attempts to recast Plaintiff's claims into an *entirely separate* basis for finding a written warranty under the second prong, the "specific level of performance over a specified period of time." This should be rejected.

Specifically, Plaintiff bases his warranty claim on the MMWA's definition of "written warranty," defined in pertinent part as:

> any written **affirmation of fact** or written promise made in connection with the sale of a consumer product by a supplier to a buyer **which relates to the nature of the material** or workmanship and affirms or promises that such material or workmanship **is defect free** …, which written affirmation, promise, or undertaking **becomes part of the basis of the bargain** between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301(6)(A) (emphasis added).[3]

In short, for a cause of action to arise under the MMWA, a plaintiff must allege only that (i) the defendant made a representation of fact relating to the nature of a consumer product, which representation (ii) made assurances as to the quality of the product (*i.e.*, that it would be "all natural" or free of defects and are not synthetic and /or otherwise non-natural); and (iii) the consumer relied upon

---

[3] Defendant does not dispute that the smoothie kits are a consumer product within the meaning of the MMWA, which broadly defines covered consumer products as "any tangible personal property … normally used for personal, family or household purposes…." 15 U.S.C. §2301(1). Moreover, the FTC has made it clear that consumer products covered under the MMWA include "food." 40 Fed. Reg. 25721, 25722 (1975).[3]

such representation(s) in purchasing the product. 15 U.S.C. § 2301(6)(A). Plaintiff alleged these facts in the complaint. FAC ¶¶ 58-68.

Federal Trade Commission ("FTC") rules, entitled "Interpretations of Magnuson-Moss Warranty Act," confirm that "defect free" and "specified level of performance over a specified period of time" are *separate* bases to establish a written warranty under the MMWA. 16 C.F.R § 700.3(a) and n.1. Defendant's briefing cites to Section 700.3 in a vacuum and omits a crucial portion of Section 700.3, which clearly states that Section 700.3's restrictive temporal scope applies ***only*** to one method of establishing a written warranty[4]-- under the second prong of the MMWA (that the "product meets a specified level of performance over a specified period of time") and ***does not*** apply to the other two methods of establishing a written warranty (*i.e.* the "defect free" method (at issue here) and the "written undertaking" method). Specifically, Section 700.3(a) says:

> 700.3 Written warranty.
>
> (a) The Act imposes specific duties and liabilities on suppliers who offer written warranties on consumer products. Certain representations, such as energy efficiency ratings for electrical appliances, care labeling of wearing apparel, and other product information disclosures may be express warranties under the Uniform Commercial Code. However, these disclosures *alone* are not written warranties under this Act. Section 101(6) provides that a written affirmation of fact or a written promise of a specified level of performance must relate to a specified period of time in order to be considered a "written warranty." A product information disclosure without a specified time period to which the disclosure relates is therefore not a written warranty. In addition, section 111(d) exempts from the Act (except section 102(c)) any written warranty the making or

---

[4] By deleting the footnote exception to the FTC interpretation, Defendant created the false impression that the agency *only* recognizes written warranties if the written affirmation of fact or a written promise of a specified level of performance related to a specified time period. However, the FTC clearly notes that there is a *second* and *third* alternative method of satisfying the written warranty requirement, and as relevant here, through the written affirmation of fact or a written promise that the product is defect fee. *See also* 15 U.S.C. 2301(6)(A) ("defect free **or** will meet a specified level of performance over a specified period of time") (emphasis added).

content of which is required by federal law. The Commission *encourages the disclosure of product information which is not deceptive and which may benefit consumers, and will not construe the Act to impede information disclosure in product advertising or labeling.* (emphasis added).

Further, a footnote to Section 700.3 states, "A 'written warranty' is also created by a written affirmation of fact or a written promise that the product is defect free, or by a written undertaking of remedial action within the meaning of section 101(6)(B)." 16 C.F.R. § 700.3(a).

Case law and other materials further establish what is evident from the plain language of the statute, that "defect free" constitutes a second avenue to establish a written warranty to which no temporal requirement applies. *See Marine Midland Bank v. Carroll*, 98 A.D.2d 516, 518-19 (N.Y. App. Div. 1984) (concluding that "written warranty" could be formed by a written affirmation of fact that the material or workmanship "is defect free;" finding "pre-delivery inspection" checklist to constitute a "written warranty" regardless of absence of any language identifying duration of the warranty or a specified level of performance); *Goodman v. Perlstein*, Case No. 86-cv-2144, 1989 WL 83452, at *2 (E.D. Pa. July 21, 1989) (indicating statements such as "a particular diamond had no flaws" or "that the stone was rock-solid" or "impervious to chipping" would constitute "defect-free" warranties within the meaning of the MMWA); *see also Consumer Protection and the Law* §14:7 (2012) (indicating "defect-free" and "will meet a specified level of performance over a specified period of time" are separate and distinct written warranties under 15 U.S.C. §2301(6)(A)).

Further, "All Natural" claims such as those asserted by Plaintiff have been specifically held by courts to be sufficiently definite and objective to constitute an express warranty that a product does not contain artificial or synthetic ingredients. *See Vicuna v. Alexia Foods, Inc.*, Case No. C-11-6119 PJH, 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012) ("plaintiffs stated a breach of warranty claim where potato products represented as "All Natural" contained an arguably synthetic ingredient); *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1117 (statements were sufficiently "specific and unequivocal" to state claim for breach of express warranty); *see also Henderson v. Gruma Corp.*, Case No., CV-10-04173,

2011 WL 1362188, at *10-11 (C.D. Cal. April 11, 2011) (rejecting argument that "all natural" constituted "non-actionable puffery").

### B. Plaintiff has Pled a Written Warranty

Defendant's alleged "All Natural" misrepresentations sufficiently show a MMWA violation. As set forth above, Plaintiff alleges that Defendant advertised and sold its smoothie kits with specific representations of facts which guaranteed certain qualities, including, for example, identifying ingredients in the ingredients list on each of the smoothie kits, and then prominently affirming and promising in writing on the packaging of the kits that they were "All Natural". *See* FAC ¶ 3; *see also* 16 C.F.R. § 700.3. Further, this affirmation of fact created express written warranties under the MMWA, upon which consumers relied in making their decisions to purchase the smoothie kits. FAC ¶¶ 58-68.

The representations made by Defendant with respect to the "All Natural" contents of the smoothie kits constitute written warranties under the MMWA insofar as they "relate[] to the nature of the material" and make promises and affirmations of fact as to the quality and contents of the product – to wit, that the smoothie kits are "defect free" as alleged in the complaint. *Cf.* FAC ¶ 64 *with* 15 U.S.C. § 2301(6)(A); *see also generally In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 958 (N.D. Ill. 2007) (plaintiff stated MMWA claim for breach of written warranty with respect to McDonald's false description of French fries as "free of milk, wheat, and gluten."); *Wolph v. Acer Am. Corp.*, Case No. C 09-01314 JSW, 2009 WL 2969467, at *3 (N.D. Cal. Sept. 14, 2009) (MMWA express warranty claims upheld, such claims can be based on labels and advertisements).

As explained *supra*, Plaintiff's claims under the "defect free" theory cannot be dismissed for lack of a temporal element. Clearly, when a food is the "consumer product" at issue, the ingredients are the component materials, and statements about the identity and character of those component materials, such as "All Natural," constitute affirmations that "relate[] to the nature of the material or workmanship" within the meaning of 15 U.S.C. §2301(6)(A). Further, as Plaintiff has alleged, these "All Natural" statements constituted, and were intended to convey to purchasers, a written promise that the ingredients labeled "All Natural" were free of a particular type of defect (*i.e.*, that they were not synthetic or unnatural). ¶ 64-65. Thus, the "All Natural" statements fall squarely within the category of written

7

statements that are actionable "written warranties" under the plain text of the MMWA. Given that Plaintiff has sufficiently pled a "defect free" claim, Defendant's assertion that Plaintiff's claims should be dismissed because they cannot establish the "specified level of performance over a specified period of time" prong of 15 U.S.C. §2301(6)(A) is meritless. Under the FTC interpretation, Plaintiff adequately pled that Defendant represented its product to be "defect free" (with the defect under the circumstances being synthetic or unnatural ingredients) which creates a written warranty. Finding a warranty here would also promote the FTC's desire to foster "disclosure of product information which is not deceptive and which may benefit consumers." 16 C.F.R. § 700.3.

Even assuming Defendant's argument that a temporal element was mandatory to establish a "defect free" written warranty claim, (which it is not), the temporal element is in fact on the smoothie kit packaging (*i.e.*. the smoothie kit's expiration date). *See* P's RJN, Exh. A. As the Food and Drug Administration itself notes, Defendant was not required under federal law to include an expiration date on the smoothie kits. *See* P's RJN, Exh. B. Thus, by affirmatively and voluntarily placing such a statement on its packaging, Jamba Juice provides the temporal element to the second prong of the MMWA standard and satisfies Defendant's straw man argument that Plaintiff must allege a specific time period to establish a written warranty under the MMWA.

Moreover, the FTC clearly would not endorse Defendant's restrictive reading of the warranty requirement as it could "construe the Act to impede information disclosure in product advertising or labeling." *Cf.* 16 C.F.R. § 700.3. This interpretation is entitled to deference. *See Browne v. Kline Tysons Imports, Inc.*, 190 F. Supp. 2d 827, 831 (E.D. Va. 2002) (indicating the FTC's MMWA regulations are entitled to "considerable respect").

### C.     The Cases Defendant Relies On Are Distinguishable

All of Jamba Juice's citations relate to the second prong of the MMWA standard, not the "defect free" prong. As noted previously, Plaintiff has explicitly pled that he brings this action under the first prong. Even if Plaintiff here was relying on the temporal prong of the statute to satisfy the written warranty requirement, Defendant's cited cases are not helpful to the Court's analysis here. First, Jamba Juice mischaracterizes *In re Sears, Roebuck & Co.*, Case No. MDL 1703, 05-cv-4742, 05-cv-2623, 2006

8

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO.12-CV-1213 (YGR)

WL 1443737 (N.D. Ill. May 17, 2006), in arguing that no warranty exists here because the material representation of "all natural" was nothing but "short descriptive phrases" rather than promises that the smoothie kits were defect-free, *or* guarantees of specific performance levels over a period of time. Def. MTD at 6-7.[5] In *Sears*, the phrase, "Made in the USA" was "a product description that *does not inform* consumers that the tools are defect-free or make *any* representation about performance at a specified level over a specified time." *Id.* at *4 (emphasis added). Here, Jamba Juice does in fact inform consumers that its smoothie kits are defect-free, *i.e.*, free of synthetic and artificial ingredients and otherwise makes promises of fact, *i.e.*, "all natural." Of course, the geographic origin of a product is vastly different than the promises Defendant made here as to the nature and quality of the *contents* of the ingredients. Whereas consumers cannot necessarily rely on the origin of production to confirm a lack of "defect" in the product itself, with food content labeling and packaging, on the other hand, consumers can and should rely on written representations of the nature and quality of the food to be consumed.

Similarly, *Skelton v. General Motors Corp.*, 660 F.2d 311, 316 n.7 (7th Cir. 1981) while noting the temporal requirement was <u>not</u> an issue on appeal, nevertheless engaged in dicta in a footnote and noted that in that instance, the warranty at issue lacked a temporal scope. *See also Kelley v. Microsoft Corp.*, Case No. 07-cv-0475 MJP, 2007 WL 2600841, *4 (W.D. Wash. Sept. 10, 2007) (relying on *Skelton* footnote). Unlike Plaintiff here who seeks to satisfy another prong of the MMWA, the plaintiffs in *Kelley* and *Skelton* sought to create a warranty by meeting the "specified level of performance over a specified period of time" and yet either provided no time period (*Skelton*) or illogically argued the "period of time" for the warranty's coverage was the distribution date for the software (*Kelley*) and not the date(s) of expected use. *Simmons*, in turn, rejected the contention that the term "new" transformed a seller's invoice into a "written warranty," not because of the absence of a durational element, but because "new" could not be read as implying any level of performance. *Simmons v. Taylor Childre Chevrolet-Pontiac, Inc.* 629 F. Supp. 1030, 1032 (1986).

Finally, *Semitekol v. Monaco Coach Corp.*, is unhelpful because there, the MMWA claim was

---

[5] Defendant implicitly concedes that its reading of the FTC interpretative regulation was unduly restrictive when it references the "defect free" prong in discussing this decision.

9

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO.12-CV-1213 (YGR)

upheld against one defendant (Caterpillar) where the plaintiff pled an affirmation of fact and the court only dismissed the MMWA claim as to another defendant (BMS) when the plaintiff failed to meet *any* prong of the "written warranty" definition. 582 F. Supp. 2d 1009, 1027-28 (N.D. Ill. 2008) ("plaintiffs claim only that BMS promised to 'supply' the motor home with patriot style mirrors. The statement does not mention 'replacement' or any other remedial action, does not state that the mirrors or any other part of the motor home would be 'defect free,' and does not state that the mirrors would meet any 'specified level of performance' over any particular time period. See 15 U.S.C. § 2301(A). Thus, the promise fails to satisfy the definition of 'written warranty' set forth in 15 U.S.C. § 2301(A)").[6]

## V. PLAINTIFF CAN BRING CLAIMS FOR FLAVORS HE HAS NEVER PURCHASED THAT HAVE SIMILAR MISREPRESENTATIONS

Plaintiff may seek to represent a class of persons with regard to a product he has never purchased so long as his claims are based on the "'same core factual allegations and causes of action.'" *Wang v. OCZ Techn. Group, Inc.*, 276 F.R.D. 618, 632-33 (N.D. Cal. 2011) (rejecting computer maker's argument that plaintiffs' claims with respect to computer models they did not purchase should be dismissed); *see also Carideo v. Dell Inc.*, 706 F. Supp. 2d 1122, 1134 (W.D. Wash. 2010) (finding

---

[6] Although Defendant did not cite to *Hairston v. South Beach Beverage Company, Inc. et al.*, 12-cv-1429 (JFW), 2012 WL 1893818 (C.D. Cal. May 18, 2012), in its motion to dismiss, that case is distinguishable and is currently on appeal. The court in *Hairston* dismissed the MMWA claim primarily because it found (however incorrectly) that the plaintiff's claims were governed by the Food, Drug, and Cosmetic Act. *Id.* at *5. Additionally, the representation in *Hairston* was "all natural with vitamins," which the court held did not constitute a "defect free" warranty, *i.e.*, free of synthetic ingredients or vitamins. *Id.**6. According to the court, "all natural with vitamins" was merely a product description. In contrast here, the representation "All Natural" is not modified with language such as "with vitamins," as in *Hairston*, but is a guarantee that the smoothies will be defect free, *i.e.*, contain only natural ingredients. FAC, Exhs. A-E. Moreover, in *Hairston*, the court erroneously applied a temporal requirement to the "defect free" prong. *Id.* at *6. Even if there were a temporal requirement under the MMWA's first prong, the expiration date on the smoothie kits satisfies it. Finally, *Hairston* is contrary to the larger number of decisions holding that representations that could also be construed as product descriptions are written warranties. *See, e.g., In re McDonald's French Fries Litig.*, 503 F. Supp. 2d at 958; *Wolph*, 2009 WL 2969467, at *3; *Vicuna*, 2012 WL 1497507, at *2; *Marine Midland*, 98 A.D.2d at 518-19; *Goodman*, 1989 WL 83452, at *2.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO.12-CV-1213 (YGR)

standing for multiple products not purchased by plaintiff where causes of action and factual allegations were the same); *Hewlett–Packard v. Super. Ct.*, 167 Cal. App. 4th 87, 89–91 (2008) (finding standing for several models where plaintiff only had purchased one model).

Here, Plaintiff seeks to represent a class of consumers who bought the same product (the smoothie kits labeled as "All Natural"), containing the same non-natural ingredients (xanthan gum, ascorbic acid and steviol gycosides), just in different flavors (Mango-a-go-go, Strawberries Wild, Caribbean Passion, Orange Dream Machine, and Razzmatazz). *See* FAC Exhs. A-E. As discussed *supra*, Plaintiff alleges he purchased Razzmatazz and Mango-a-go-go. Thus, Plaintiff has standing to represent a class of persons with regard to the smoothie kits, as the claims are based on the "same core factual allegations and causes of action," *i.e.*, he alleges that all of the Jamba Juice smoothie kits contain the same "All Natural" misrepresentation and the same alleged non-natural ingredients as the products Plaintiff has purchased. Further, Plaintiff's claims for violations of the CLRA, UCL, FAL and MMWA relate to all of the Products.

The court in *Wang* examined the propriety of the inclusion of claims relating to similar products as the ones purchased by the plaintiff there. In *Wang,* the court found that not only was it clear that the plaintiff had standing for the items that he had purchased, exclusion of like items at the motion to dismiss stage was a premature determination of class certification issues and therefore it was more appropriate to examine in the class certification context or upon a motion for summary judgment: "Although Wang's inability to allege injury based on products that he did not purchase may ultimately subject those claims to proper dismissal pursuant to a Rule 12(b) motion or motion for summary judgment, inclusion of those products at the pleading stage and prior to a motion for class certification is not improper." *Wang*, 276 F.R.D. at 633. This reasoning has been echoed by other courts as well. *Cardenas v. NBTY, Inc.*, CIV. S-11-1615 LKK, 2012 WL 1593196 (E.D. Cal. May 4, 2012), *Bruno v. Quten Research Inst.*, LLC, 8:11–cv–00173, 2011 WL 5592880, at *3–4 (C.D. Cal. Nov.14, 2011).

The cases cited by Defendant to support the argument that Plaintiff here has no standing are unavailing. In *Dreyer's*, the plaintiff had purchased the Drumstick ice cream product and had defined the class to include an entirely different product, Dibs, also manufactured by Dryers. *Carrea v. Dreyer's*

*Grand Ice Cream, Inc.*, C 10-01044 JSW, 2011 WL 159380, at *1, *3 (N.D. Cal. Jan. 10, 2011) *aff'd on other grounds,* 11-15263, 2012 WL 1131526 (9th Cir. Apr. 5, 2012). *Zwart* is factually distinguishable because the alleged misrepresentations related to customizable notebooks, however, the plaintiffs in that case purchased pre-configured notebooks. *Zwart v. Hewlett-Packard Co.*, 10-cv-03992-JF, 2011 WL 767750, at *3-4 (N.D. Cal. Feb. 25, 2010). The court noted that "[h]ad Plaintiffs purchased a customizable notebook online and received a non-conforming card, their allegations likely would support a UCL or CLRA claim." *Id.* at *4.

*In re Wells Fargo* involved a violation of the federal securities laws which contain an express provision requiring the plaintiff to have purchased a security issued in the offering for which a plaintiff's claims are based. *In re Wells Fargo Mortgage-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 964 (N.D. Cal. 2010) Because the plaintiff in that case purported to represent a class comprised of 54 public offerings, but had only purchased securities from 17 of those separate offerings, the court, applying a specific security requirement mandated by statute, denied standing as to the public offerings the plaintiff did not purchase. *Id.* at 965-66. None of the claims here have the unique statutory limitations of the securities laws. Thus, *In re Wells Fargo* is inapplicable.[7] Furthermore, in the instant case, Plaintiff does not seek to include purchasers of dissimilar products from the putative class. Rather, all of the items alleged to contain "All Natural" ingredients are all Jamba Juice smoothie kits; the only difference is the flavor. Thus, *Dreyer's* and *Zwart* are inapplicable.

Therefore, Plaintiff's claims regarding all of the flavors of smoothie kits are based on the same factual allegations and causes of action and are proper at this stage of the proceedings.

## VI.    LEAVE TO AMEND SHOULD BE GRANTED TO CURE ANY DEFICIENCIES

Although Plaintiff believes he has adequately pled all the requisite elements of his claims and remedies, should the Court find any deficiencies, he respectfully requests leave to amend to address them, especially in light of the inadequate meet and confer pursuant to Local Rule 7-3. In dismissing for

---

[7] *Hairston* was also wrongly decided on the issue of whether a plaintiff has standing to represent a class of people who purchased the same product, except in a different flavor. The court in *Hairston* failed to consider the cases cited herein and moreover relied on the cases Plaintiff has distinguished here, namely, *Carrea v. Dreyer's* . *Hairston,* 2012 WL 1893818, at 5, n. 5.

failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. U.S.*, 58 F.3d 494, 497 (9th Cir. 1995) (citations omitted). Leave to amend a complaint is to be liberally granted, especially if it appears the pleading could be cured by the allegation of other facts. *Lopez v. Prof'l Collection Consultants*, No. CV 11-3214 PSG (PLAx), 2011 WL 4964886, at *3 (C.D. Cal. Oct. 19, 2011) (citing *Doe*, 58 F.3d at 497)); *Nickoloff v. Wolpoff & Abramson, L.L.P.*, 511 F. Supp. 2d 1043, 1046 (C.D. Cal. 2007) (citing *U.S. v. Webb*, 655 F.2d 977, 979 (9th Cir.1981)). The Court should grant leave to amend as long as amendment of the pleading does not cause undue delay, bad faith, and futility of the amendment or prejudice. *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.").

Here, no other complaint has had the benefit of being tested by a motion to dismiss. If necessary, Plaintiff should be given an opportunity to perfect his allegations. Nowhere in its moving papers does Defendant allege that an amendment would be motivated by bad faith or dilatory conduct, or result in prejudice to Defendant; indeed, it would not. Accordingly, and given the wide ranging effects of Defendant's conduct and the merits of Plaintiff's claims, if this Court finds that Plaintiff has improperly pled any element of the claims, he respectfully requests that he be given an opportunity to re-plead his claims.

## VII. CONCLUSION

Thus, based on the foregoing, Plaintiff respectfully requests that the Court enter an order denying Defendant's motion to dismiss. If the Court is inclined to grant the Motion, Plaintiff requests the Court grant leave to amend.

DATED: June 21, 2012                    Respectfully submitted,

**FINKELSTEIN THOMPSON LLP**

By: /s/ Rosemary M. Rivas

13
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO.12-CV-1213 (YGR)

Rosemary M. Rivas

Danielle A. Stoumbos
100 Bush Street, Suite 1450
San Francisco, California 94104
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

*Attorney for Individual and Representative
Plaintiff Kevin Anderson*